O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNE GADDIE, | ) Case No. EDCV 11-439-OP |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the three disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 8 at 3.)

## I.

## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered Listing 1.02A;

(2) Whether the ALJ properly considered Listing 1.03; and

(3) Whether the ALJ properly considered lay witness statements.

(JS at 3.)[3]

## II.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v.

---

[3] Plaintiff sought benefits for a closed period beginning October 2, 2006, and ending upon her return to work on December 15, 2008. (AR at 9, 21-22.)

Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## DISCUSSION

**A.     The ALJ's Findings.**

The ALJ found that Plaintiff has severe physical impairments, including morbid obesity with obstructive sleep apnea, degenerative disc disease of the neck with chronic pain despite surgery, degenerative arthritis of the knees, and prior right ulnar nerve surgery with weak right hand grip.  (AR at 11.)[4]  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [T]he claimant can stand and/or walk one hour in an eight hour workday 15 to 30 minutes at a time; she can use a cane as needed; she should avoid uneven surfaces; she can sit eight hours in an eight-hour workday with normal breaks such as every two hours; she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can occasionally stoop and bend; she can climb stairs, but she cannot climb ladders, work at heights, or balance; she cannot operate foot pedals or controls; she cannot squat, kneel, crawl, run, or jump; she cannot do forceful gripping, grasping, or twisting, with her left hand only, but she can do occasional fine manipulation such as keyboarding with the left hand; she can do frequent gross manipulation such as operating drawers and carrying files with the left hand and arm; she has no limitations on the right hand; she can do occasional neck motion, but should avoid extremes of motion; her head should be held in a comfortable position most of the time; and

---

[4]  The ALJ found that Plaintiff also suffers from depression, but that it did not rise to the level of a severe impairment.  (AR at 12.)

she can maintain a fixed head position for 15 to 30 minutes at a time, occasionally.

(Id. at 13.)

Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Plaintiff was unable to perform her past relevant work of learning consultant, risk manager, senior product support analyst, and surgery scheduler. (Id. at 16-17.) The ALJ also relied on the VE's testimony to determine that there were alternative occupations such as Charge Account Clerk (Dictionary of Occupational Titles ("DOT") No. 205.367-014) and Surveillance System Monitor (DOT No. 379.367-010) that exist in significant numbers in the national economy. (AR at 17-18.)

**B.      The ALJ's Consideration of the Listings.**

      **1.      Applicable Law.**

If the ALJ concludes at Step Two of the sequential evaluation that the plaintiff's impairments are "severe" within the meaning of the Act, the ALJ proceeds at Step Three of the sequential evaluation to compare the plaintiff's impairments to the impairments listed in the "Listing of Impairments" set forth in 20 C.F.R. pt. 404, subpt. P, App.1. See 20 C.F.R. § 416.925. If any "severe" impairment, or combination of "severe" impairments, meets or equals a listed impairment, the plaintiff is deemed disabled. Id.

A plaintiff's impairment need not precisely meet the criteria of the listing in order to obtain benefits. If the plaintiff's impairment or combination of impairments is medically equivalent to one in the listing, disability is presumed, and benefits are awarded. Id. § 404.1520(d); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989). Medical equivalence will be found if the medical findings are at least equal in severity and duration to the listed findings. Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the

symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.929, 416.928. The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. Id.

A plaintiff bears the burden of proving at Step Three of the analysis that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(a)(4)(iii); Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To meet a listed impairment, the plaintiff has the burden of showing that she meets each and every element described in that listing. 20 C.F.R. § 404.1525(d); Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).

**2. Listing 1.02.**

**a. Background.**

Plaintiff contends that the ALJ failed to properly consider whether Plaintiff's impairments met or medically equaled Listing 1.02. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff's arthritis in her knees did not meet or medically equal Listing 1.02A. (JS at 3-14.) As relevant here, Listing 1.02 requires the "involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.02. In turn, section 1.00(B)(2)(b) states that "[an] example of ineffective ambulation [is] the inability to walk a block at a reasonable pace on rough or uneven surfaces." Id. § 1.00(B)(2)(b). The basis for Plaintiff's claim is that the finding by the ALJ in his RFC assessment that Plaintiff should avoid walking on uneven surfaces meets the definition under the Listing for an inability to ambulate effectively. (JS at 3-14.)

At the hearing before the ALJ, the medical expert testified that Plaintiff

"probably has degenerative arthritis in the knees." (AR at 25.) The expert further testified that Plaintiff did not meet or equal Listing 1.02. (Id.) The expert opined that he would limit Plaintiff to "standing or walking for one hours out of eight, 15 to 30 minutes at a time, using a case as needed" and that "[u]neven surfaces should be avoided." (Id. at 26.)

In his decision, the ALJ relied on the testimony of the medical expert in concluding that Plaintiff "should avoid uneven surfaces," but that "[t]he medical evidence does not support a finding that the claimant has the severity of symptoms required either singly or in combination to meet or medically equal listing 1.02 for arthritis of a major joint . . . ." (Id. at 10.)

**b.  Analysis.**

Plaintiff's argument fails to account for the fact that Listing 1.00(B)(2)(b) includes distance and temporal components. The fact that the ALJ adopted the medical expert's recommendation with respect to avoiding uneven surfaces does not establish that Plaintiff is unable to ambulate effectively. Plaintiff's attempt to bootstrap the ALJ's imposition of limitations for purposes of the RFC assessment to the Step Three analysis is unpersuasive. Moreover, the ALJ did not conclude in his RFC assessment that Plaintiff was incapable of walking on uneven surfaces, only that she should avoid doing so in her employment. Significantly, none of Plaintiff's treating physicians reported that she could not walk on uneven terrain or that she was unable to ambulate effectively.

To the extent that Plaintiff argues that the ALJ's consideration of whether Plaintiff's impairment met or equaled the Listing was deficient in that it was overly conclusory, her claim still fails. The ALJ expressly found that Plaintiff did not meet or equal Listing 1.02. In forming this conclusion, the ALJ relied on the medical expert's testimony, his review of the medical evidence of record, and the evidence regarding Plaintiff's activities. (Id. at 12-

16.) The record plainly shows that the ALJ considered the Step Three issue in light of all of the evidence presented in the medical record and at the hearing. See Lewis v. Apfel, 236 F.3d 503, 513-14 (9th Cir. 2001) (the lack of a formal analysis and findings at the Step Three level will not constitute reversible error when the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory Step Three finding).

Accordingly, the Court finds that the ALJ's consideration of Listing 1.02A was not deficient. Thus, there was no error.

### 2. Listing 1.03.

#### a. Background.

Plaintiff argues that the ALJ erred in failing to consider whether the arthritis in her knees met or equaled Listing 1.03. (JS at 14-22.) As relevant here, Listing 1.03 involves reconstructive surgery or surgical arthrodesis[5] of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00(B)(2)(b). 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.03. As explained above, section 1.00(B)(2)(b) states that "[an] example of ineffective ambulation [is] the inability to walk a block at a reasonable pace on rough or uneven surfaces." Id. § 1.00(B)(2)(b). Again, Plaintiff argues that her impairment met the Listing because the ALJ found that she should avoid walking on uneven surfaces. (JS at 14-22.)

As explained above, the medical expert testified that Plaintiff "probably has degenerative arthritis in the knees" and that "[u]neven surfaces should be avoided." (AR at 25-26.) Accordingly, the ALJ found that Plaintiff "should avoid uneven surfaces." (Id. at 10.) Neither the medical expert nor the ALJ

---

[5] "Arthrodesis" is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells. See Cunningham v. Astrue, Case No. CV 11-144 JC, 2011 WL 5103760, *4 n.3 (C.D. Cal. Oct. 27, 2011).

considered whether Plaintiff's impairment met or equaled Listing 1.03.

### b. **Analysis.**

Plaintiff failed to meet her burden at Step Three in two respects. First, Plaintiff provided no proof that her past knee surgeries involved reconstruction or surgical arthrodesis. Rather, to the extent that the record reveals any information regarding Plaintiff's past knee surgeries, the procedures were referred to as arthroscopy and debridement. (Id. at 200, 219, 203, 330.) The record simply does not provide enough evidence regarding Plaintiff's knee surgeries to conclude that she has met this element of Listing 1.03.

In addition, as discussed above, the fact that the ALJ found in his RFC assessment that Plaintiff should avoid uneven surfaces is not sufficient for a finding that Plaintiff has an inability to ambulate effectively, as defined by the Listings.

In light of Plaintiff's failure to provide sufficient evidence that she met or equaled Listing 1.03, the Court finds that the ALJ did not err in failing to consider Listing 1.03.

## C. **If the ALJ's Failure to Mention the Lay Witness Statement Was Error, the Error Was Harmless.**

### 1. **Background.**

Plaintiff claims that the ALJ erred in ignoring the Third Party Function Report completed by Plaintiff's friend, Judith Appleton. (JS at 22-26; see also AR at 164-71.)

According to Plaintiff's argument, Ms. Appleton's report furthered Plaintiff's claim by explaining her symptoms and limitations, as follows:

> On March 31, 2008, Judy Appleton, plaintiff's friend, completed a Function Report – Adult – Third Party. Ms. Appleton indicated in this report that she has known the plaintiff for approximately 4 years and spends 15-20 hours a week with the

plaintiff; she stated that plaintiff tries to accomplish at least one chore each day, even after taking a shower, she must rest for a while, that much of her day requires resting otherwise she is hurting; plaintiff does not take care of anyone else but she does take care of her pets or other animals but has help from a friend or neighbor; before her illnesses, injuries, or condition plaintiff was able to do the following which she cannot do now: pick up her cats, walk her dogs, pick up the yard and bathe her dogs; plaintiff's illnesses, injuries, or conditions affect her sleep because she cannot stay in any position (sitting, standing or laying) without her shoulder muscles or leg muscles from spasming and she is not able to sleep more than about 4 hours, then the spasms wake her; plaintiff's illnesses, injuries, or condition has affected her personal care because of limited arm and neck movement, it is difficult for her to dress, wash and fix her hair, to shower because she cannot raise her hands or easily reach her back area, she also cannot bend down or over easily without losing her balance which makes shaving difficult and sitting and standing back up from the toilet, it is also difficult for her to sometimes clean herself after using the toilet, twisting is impossible, she now must wear bras that snap in the front only, she cannot wear a shirt or dress that buttons or zip in back without someone helping her because she cannot reach to her back; plaintiff does not need special reminders to take care of personal needs and grooming or to be reminded to take her medicine; plaintiff does household chores but it takes her at least twice as long to do anything as compared to the average person since her movements limit her; plaintiff needs help or encouragement doing housework such as reaching above her shoulders or down on the ground, she needs to be told she is doing well and it is okay that

it takes her longer to accomplish a task and now she has to pay someone to do things such as household repairs, window cleaning, hanging pictures or yard work; plaintiff goes outside daily even if she is only sitting; plaintiff can go out alone but uses a cane to steady herself so that she does not fall; plaintiff does drive but needs someone with her to help her at intersections because she cannot turn her head to see side to side; plaintiff shops for foods at least once a week and she uses the electric cart to ride in and she also must have help to reach the upper shelves and it takes her longer than the average shopper; plaintiff does attend social activities but any activity is at best once a week and if she goes she has limited participation; plaintiff sometimes needs someone to accompany her when she goes places because it is very tiring for her and occasionally she may need medication and it is safer for her to not be alone; if plaintiff attends any group get together it is the only thing she can do on that day; plaintiff does not have problems getting along with family, friends, neighbors, or others; the changes in plaintiff's social activities since the illnesses, injuries or conditions began are that it is very stressful for her to rely on others to now help her and it upsets her that her body will not let her do things; the following have been affected by plaintiff's illnesses, injuries or conditions: lifting, squatting, bending, standing, reaching (she must use a tool if above her shoulders or on the floor), walking, kneeling, stair climbing, completing tasks; she can walk 200 feet before needing to rest for 5 minutes or so before she can resume walking; plaintiff does not always finish what she starts because she gets tired; plaintiff does not handle stress well sometimes because she feels overwhelmed that she is unable to complete a task or chore which

|   |   |
|---|---|
| 1 | even causes more stress; changes in routine cause her blood pressure |
| 2 | to go up and occasionally she cannot accomplish a change or is gets |
| 3 | accomplished very slowly; she has noticed unusual behavior or fears |
| 4 | in plaintiff such as it is very difficult for her to no longer be self- |
| 5 | sufficient and she has to rely on other people for help, her mind |
| 6 | works very well but her body will not let her do like she used to; |
| 7 | plaintiff needs use of a cane, brace/splint, glasses and a tool for |
| 8 | reaching above her shoulders; she states that plaintiff is trying to do |
| 9 | more a little each day but it is a very slow process, she tires very |
| 10 | easily, she must try to do activities but then she must lay down for a |
| 11 | while and or sit for a while or stand, she cannot do anything without |
| 12 | rotating and doing something else because she gets tires or being |
| 13 | hurting otherwise, she gets very anxious about things, then become |
| 14 | frustrated, stressed and sometimes overwhelmed because she cannot |
| 15 | accomplish things, it is hard for plaintiff to see and know that she is |
| 16 | physically incapable to support and take care of herself and others. |

(JS at 22-25.)

The ALJ made no mention of Ms. Appleton's report in his opinion.

**2.     Applicable Law.**

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn

statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to *reject* such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ's failure to address lay witness testimony generally is not harmless. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991). In failing to address a lay witness statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

### 3. Analysis.

Here, the ALJ failed to mention the Function Report completed by Plaintiff's friend. A review of that report, however, demonstrates that it is not inconsistent with the ALJ's findings and, therefore, it is not at all clear that the ALJ actually rejected this evidence. Accordingly, there was no need for the ALJ to discuss this evidence.

For instance, Ms. Appleton's statements that Plaintiff cannot stay in one position for a long time, can walk for only 200 feet at a time, and must use a cane, are accommodated by the ALJ's findings that Plaintiff can walk for 15 to 30 minutes at a time, use a cane as needed, and sit with breaks every two hours. Similarly, Ms. Appleton's statements regarding Plaintiff's limited ability to squat, bend, and kneel, are consistent with the ALJ's limitations in these specific areas within his RFC assessment. Finally, the ALJ's limitations on Plaintiff's ability to perform neck movement, lift and carry items, and perform hand manipulations, are consistent with Ms. Appleton's assertions.

However, even if the ALJ's failure to address the opinions of Plaintiff's

friend was error, the error is harmless because no reasonable ALJ would have reached a different disability determination having considered it. Stout, 454 F.3d at 1056; Robbins, 466 F.3d at 885. This is because the opinions of Plaintiff's friend mirrored the subjective complaints of Plaintiff. Plaintiff has not alleged that the ALJ failed to properly consider Plaintiff's subjective complaints. Accordingly, the Court finds that even if this testimony was fully considered, no reasonable ALJ could have reached a different disability determination. Thus, any error was harmless.

## IV.
## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: November 9, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge